# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Criminal No. 2:23cr 63 |
| v. | ) |
| | ) 18 U.S.C. § 1344 |
| DION LAMONT CAMP | ) Bank Fraud |
| (a.k.a. "Myles Camp") | ) (Counts One-Five) |
| | ) |
| Defendant. | ) 18 U.S.C. § 982(a)(2) |
| | ) Criminal Forfeiture |

## INDICTMENT

*May 2023 Term -- At Norfolk, Virginia*

### GENERAL ALLEGATIONS

At all times material and relevant to this Indictment:

1. CAMP, Jane Doe #2 (JD2), Jane Doe #3 (JD3), Jane Doe #4 (JD4) and Jane Doe #5 (JD5) lived within the Eastern District of Virginia.

2. Beginning on a date unknown, but believed to be in or about August 2016, and continuing through the present day, in the Eastern District of Virginia and elsewhere, the defendant, DION LAMONT CAMP, devised, and intended to devise, a scheme and artifice to defraud and fraudulently obtain money and property by means of materially false and fraudulent pretenses, representations, and promises from JD2, JD3, JD4, JD5, and Jane Doe #6 (JD6), and others known and unknown to the grand jury.

### PURPOSE OF THE SCHEME

3. The purpose of CAMP's scheme and artifice to defraud was to obtain money and property to which he was not entitled by coercing and persuading women to obtain money through financial institutions for CAMP's benefit.

## MANNER AND MEANS

4. The manner and means by which CAMP carried out the scheme and artifice to defraud included, but were not limited to, the following:

5. CAMP routinely met women, started romantic relationships with them, and then convinced, coerced and persuaded them to obtain money through financial institutions for CAMP's benefit. Specifically, CAMP had the women take out fraudulent loans for cars that were never purchased, without any intent to repay the loans, and retained all or the vast majority of the money for himself.

6. CAMP feigned to be a wealthy businessman. He would take the women to high-end restaurants and drove luxury vehicles. Often times, CAMP claimed his assets were frozen by the IRS and had tax issues. Thus, he claimed he needed help getting loans or money to resolve those issues.

7. CAMP often claimed his name was "Myles" CAMP.

### 2019 Audi Q3

8. In or about 2020, CAMP and JD2 became involved in a romantic relationship.

9. On or about July 22, 2020, CAMP created and registered Bryant Motor Sport LLC with the Virginia State Corporation Commission.

10. CAMP originally listed the registered agent as Jane Doe #1 (JD1) for Bryant Motor Sport LLC. On August 3, 2020, CAMP changed the registered agent to JD2 without JD2's knowledge.

11. On or about May 14, 2020, CAMP had JD2 apply for a loan from Navy Federal Credit Union (NFCU) to purchase a 2019 Audi Q3. NFCU approved the loan in an amount not to exceed $17,100.

2

12. At CAMP's direction, JD2 signed the NFCU loan check and CAMP filled out the rest, making the check payable to Bryant Motorsports for $16,990. CAMP listed a 2019 Audi Q3 as the car purchased with the check.

13. CAMP had no intention of purchasing the car for which NFCU gave the loan to JD2.

14. On or about August 5, 2020, CAMP accompanied JD2 to TowneBank in Virginia Beach, Virginia, where CAMP had JD2 open a business account ending in 6395 in JD2's name and Bryant Motor Sports LLC. CAMP used this account to cash checks from JD2's NFCU loan proceeds.

15. Neither CAMP nor JD2 ever purchased the 2019 Audi Q3.

16. Between August 5, 2020, and August 18, 2020, CAMP had JD2 withdraw all but $365 of the NFCU loan proceeds and give the cash to CAMP.

17. CAMP used physical, mental, and sexual abuse towards JD2 to make her comply with his requests and demands.

**2020 Mercedes E450**

18. In or about 2020, CAMP and JD3 became involved in a romantic relationship.

19. On or about November 2, 2020, CAMP asked JD3 to apply for a NFCU car loan for a truck CAMP could use for work. JD3 applied for and received a loan from NFCU not to exceed $63,000..

20. JD3 signed the NFCU loan check and CAMP filled out the rest, making the check payable to Bryant Motorsport LLC for $62,066.44. CAMP listed a 2020 Mercedes E450 as the car purchased with the check.

21. CAMP had no intention of purchasing the car for which NFCU gave the loan to JD3.

22. JD2, who did not know JD3, negotiated this NFCU car loan check into the previously described TowneBank business account. At CAMP's direction, JD2 then withdrew approximately $53,515 in cash from these proceeds, obtained a $30,000 cashier's check in JD2's name, and then deposited the cashier's check into a Wells Fargo joint account ending in 5873 which CAMP established using his and JD2's names. CAMP was the only one who could access the Wells Fargo joint account.

23. Between November 27, 2020, and December 15, 2020, CAMP depleted all funds in the Wells Fargo account.

24. Neither CAMP nor JD3 ever purchased the 2020 Mercedes E450 with the loan proceeds.

25. CAMP used physical, mental, and sexual abuse towards JD3 to make her comply with his requests and demands.

**2021 Mercedes GLE350**

26. CAMP met JD4 in or about August 2020. They began to date and became involved in a romantic relationship.

27. On or about October 23, 2020, CAMP asked JD4 to apply for a NFCU car loan so she could upgrade her car and buy a Mercedes GLE350. JD4 applied for and she received a loan from NFCU not to exceed $26,800.

28. On October 27, 2020, while test driving a 2021 Mercedes GLE350 in Arlington, Virginia, JD4 signed the blank NFCU loan check and gave it to CAMP. Later that same day, per

4

CAMP's direction, JD4 used Mercedes' in-house financing to purchase the 2021 Mercedes GLE350 for $71,435.48.

29. In December 2020, this same vehicle was listed on the previously signed NFCU loan check, which was made payable to Bryant Motor Sport LLC for $26,644. However, the 2021 Mercedes GLE350 had already been financed through Mercedes' in-house financing.

30. The loan check was negotiated by JD2 and deposited into the Bryant Motor Sport LLC's business account at TowneBank.

31. CAMP used mental abuse and intimidation towards JD4 to make her comply with his requests and demands.

**2021 Lexus ES350**

32. CAMP met JD5 outside an ABC store in or about June or July 2020. They began to date and became involved in a romantic relationship.

33. In or around April 2021, CAMP created and registered Wholesale Direct LLC with the Virginia State Corporation Commission. CAMP listed the registered agent as JD5.

34. On or about April 23, 2021, CAMP asked JD5 to apply for a NFCU car loan for a truck CAMP could use for work. JD5 applied for and she received a loan from NFCU not to exceed $44,000.

35. At CAMP's direction, JD5 signed the NFCU loan check, which was payable to Wholesale Direct for $43,987. CAMP listed a 2021 Lexus ES350 as the car purchased with the check.

36. CAMP had no intention of purchasing the car for which NFCU gave the loan to JD5.

5

37. CAMP took JD5 to TowneBank in Norfolk, Virginia, where CAMP had JD5 open a business account ending in 9974 in JD5's name and Wholesale Direct. The NFCU loan check was deposited. All monies that were deposited into this account were withdrawn by JD5 at the direction of CAMP and given to CAMP as cash.

38. Neither CAMP nor JD5 ever purchased the 2021 Lexus ES350 with the loan proceeds.

39. CAMP used mental abuse and intimidation towards JD5 to make her comply with his requests and demands.

**2021 Audi Q5**

40. CAMP met JD6 in high school. In 2020, they began to date and became involved in a romantic relationship.

41. CAMP had JD6 open a bank account with NFCU.

42. On or about June 10, 2022, CAMP asked JD6 to apply for a NFCU car loan. JD6 applied for and she received a loan from NFCU not to exceed $40,000.

43. JD6 signed the NFCU loan check, which was blank at the time, at CAMP's direction. JD6 then mailed the signed, blank check to CAMP at his P.O. Box in Virginia Beach.

44. CAMP made the check payable to Wholesale Direct and listed a 2021 Audi Q5 as the car purchased with the check.

45. CAMP had no intention of purchasing the car for which NFCU gave the loan to JD6

46. Neither CAMP nor JD6 ever purchased the 2021 Audi Q5.

47. CAMP used mental abuse and intimidation towards JD6 to make her comply with his requests and demands.

## COUNTS ONE-FIVE
### (Bank Fraud)

48. Paragraphs 1 through 47 of this Indictment are hereby realleged and incorporated by reference as though fully set in.

49. On or about the dates and in the manner set forth below, DION LAMONT CAMP, defendant herein, did knowingly and intentionally for the purpose of executing the aforesaid scheme and artifice to defraud and to obtain moneys, funds, credits, assets, securities owned by and under the custody and control of Navy Federal Credit Union, which qualifies as a financial institution as defined under Title 18, United States Code, Section 20, for the approximate amount as indicated, by means of materially false and fraudulent pretenses, representations, and promises identified below, and caused the same, each transaction being a separate count of this Indictment as indicated:

| Count | Date | Description/Purpose of Transaction |
|---|---|---|
| ONE | May 14, 2020 | $16,990 Car Loan for a 2019 Audi Q3 |
| TWO | October 23, 2020 | $26,644 Car Loan for a 2021 Mercedes GLE350 |
| THREE | November 2, 2020 | $62,066 Car Loan for a 2020 Mercedes E450 |
| FOUR | April 23, 2021 | $43,987 Car Loan for a 2021 Lexus ES350 |
| FIVE | June 10, 2022 | $39,660 Car Loan for a 2021 Audi Q5 |

(All in violation of Title 18, United States Code, Sections 1344 and 2.)

# **FORFEITURE**

THE GRAND JURY FURTHER FINDS PROBABLE CAUSE THAT:

1. The defendant, if convicted of any of the violations alleged in Counts One through Five of this indictment, shall forfeit to the United States, as part of the sentencing pursuant to Federal Rule of Criminal Procedure 32.2, any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of the violation.

2. If any property that is subject to forfeiture above is not available, it is the intention of the United States to seek an order forfeiting substitute assets pursuant to Title 21, United States Code, Section 853(p) and Federal Rule of Criminal Procedure 32.2(e).

(In accordance with Title 18, United States Code, Section 982(a)(2)(A).)

Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office

UNITED STATES v. DION LAMONT CAMP
Criminal No. 2:23cr

A TRUE BILL:

REDACTED COPY

_____
FOREPERSON

JESSICA D. ABER
UNITED STATES ATTORNEY

By: _____
Elizabeth M. Yusi
Virginia Bar No. 91982
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number - 757-441-6331
Facsimile Number - 757-441-6689
E-Mail: Elizabeth.Yusi@usdoj.gov

E. Rebecca Gantt
Virginia Bar No. 83180
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number - 757-441-6331
Facsimile Number - 757-441-6689
E-Mail: Rebecca.Gantt@usdoj.gov